WACHAL, Respondent, v. KETTERHAGEN MOTOR SALES, INC., Appellant.

*No. 75–490. Submitted on briefs December 1, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 770.)

For the appellant the cause was submitted on the briefs of *Martin W. Harrison* and *Dempsey & Harrison Law Office* of Whitewater.

For the respondent the cause was submitted on the brief of *John H. Short* of Fort Atkinson.

ROBERT W. HANSEN, J.    This is the first appeal to this court involving the application of the Wisconsin Consumer Act,[1] a consumer credit law that has its enthusiastic defendants and its less than enthusiastic critics.[2] However, this appeal brings only a single and

---

[1] Secs. 421.101–428.106, Stats.

[2] *See:* Whitford and Laufer, *The Impact of Denying Self-Help Repossession of Automobiles: A Case Study of the Wisconsin Consumer Act,* 1975 Wis. L. Rev. 607, 608; Heiser, *Wisconsin Consumer Act—A Critical Analysis,* 57 Marq. L. Rev. 389 (1974); Holbrook and Bugge, *Creditor's Responsibilities and Duties Under the WCA,* 46 No. 1, Wis. Bar Bull. 37 (Feb. 1973); Davis, *Legislative Restriction of Creditor Powers and Remedies: A Case Study of the Negotiation and Drafting of the Wisconsin Consumer Act,* 72 Mich. L. Rev. 1 (1973); Barrett and Jones, *Wisconsin Consumer Act—A Freak Out?,* 57 Marq. L. Rev. 483 (1974).

narrow enough issue for this court to resolve. All issues raised by the appellant stand or fall on the answer to the question: Did the plaintiff "surrender" the station wagon to the defendant within the meaning of sec. 425.-206 (1) (a), Stats.?

Supplanting with respect to consumer credit transactions the provisions for repossession of collateral in the Uniform Commercial Code,[3] the Wisconsin Consumer Act provides, subject to certain exceptions, that: "[N]o creditor shall take possession of collateral by means other than legal process in accordance with this subchapter."[4] One exception to this requirement exempts cases where "(a) The customer has surrendered the collateral."[5] If a merchant repossesses collateral other than in a "surrender" or through the prescribed legal processes, the creditor incurs substantial penalties, statutorily specified.[6] Relief from the principal penalty of forfeiture of the article sold is afforded only if the merchant ". . . shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[7] In the case before us, the plaintiff and defendant alike acknowledge that the transaction here is governed by the Wisconsin Consumer Act. Both sides also agree that the defendant did not repossess the vehicle involved by the legal process steps prescribed by that Act.[8] Further, defendant does not contend that, assuming it violated sec. 425.206, Stats., it met its burden of proof to show such noncompliance was unintentional and bona fide. So the sole issue, as thus narrowed by the parties, becomes

---

[3] *See:* Sec. 409.503, Stats.

[4] Sec. 425.206 (1), Stats.

[5] Sec. 425.206 (1) (a), Stats.

[6] *See:* Secs. 425.305 and 425.308, Stats.

[7] Sec. 425.301 (3), Stats.

[8] Secs. 425.203, 425.205 and 425.207, Stats.

whether the repossession in this case was a "surrender" of the collateral within the meaning of sec. 425.206(1)(a), Stats.

As to the "voluntary surrender" of collateral, the Act provides: "Notwithstanding . . . any other law, the customer shall have the right at any time to voluntarily surrender all of his rights and interests in the collateral to the merchant."[9] The Act defines a "voluntary surrender" as follows: "The surrender of collateral by a customer is not a voluntary surrender if it is made pursuant to a request or demand by the merchant for the surrender of the collateral, or if it is made pursuant to a threat, statement or notice by the merchant that the merchant intends to take possession of the collateral."[10] The parties agree that if the surrender here was voluntary, the plaintiff's action for wrongful repossession of the collateral would fail, and it is clear that it would.[11] However, if the surrender was not "voluntary," as that word is defined in sec. 425.204(3), Stats., the defendant was required to comply with requirements for repossession mandated by sec. 425.105, Stats., providing that

[9] Sec. 425.204(1), Stats.

[10] Sec. 425.204(3), Stats.

[11] As to the obtaining of a full deficiency judgment in addition to repossession of the collateral, we note what appears to be a contradiction between two sections of the Wisconsin Consumer Act. Sec. 425.204(2) suggests, by reference to secs. 409.504 to 409.507 of the Uniform Commercial Code, that upon "voluntary surrender" of the collateral by the purchaser, the merchant is entitled to a full deficiency judgment, plus retention of the collateral. This consequence is, it would appear, contradicted by sec. 425.209(2) of the Act, which provides that "If the merchant repossesses *or accepts voluntary surrender* of goods which were the subject of the sale . . ." [Emphasis supplied.], the right to a deficiency judgment is limited. Legislative action would be preferable to a judicial search for the legislative intent in enacting two sections of the same act which appear to collide head-on. *See:* Holbrook and Bugge, 46, No. 1, Wis. Bar Bull. at 45, 46 (Feb. 1973), n. 2.

a merchant may not ". . . take possession of collateral . . . other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default . . . and then only upon the expiration of 15 days after notice is given. . . ." The defendant concedes that there was not here a "voluntary surrender" of the station wagon because the defendant did not wait fifteen days after giving notice of the consumer's right to cure default.[12] Thus the dispositive issue becomes whether this plaintiff voluntarily surrendered the station wagon to the defendant as that phrase is defined in sec. 425.204(3), Stats.

As might be expected, the evidence presented at trial concerning the circumstances surrounding the repossession of the station wagon is in conflict. Particularly sharp is the conflict in the testimony as to what was said by each party during the two conversations in the parking lot at the plaintiff's place of employment. For the defendant corporation, its secretary-treasurer, Joseph Ketterhagen, Jr., testified that, when he met the plaintiff in the parking lot for the second time on December 12th, the plaintiff told him that the paycheck from which he had promised a payment had been garnisheed. The corporate officer testified he then said, "Well, Mr. Wachal, we can't go on this way. Something has to be done" and that Mr. Wachal replied, "Well, you will have to take the car" and added, "Would you do me a favor

---

[12] In addition to waiting fifteen days after given notice of the right to cure default, an administrative rule imposes the further requirement that no repossession will meet the requirements under sec. 425.106(1)(a) ". . . where such surrender is not a voluntary surrender, if the merchant (1) Fails to provide notice to the customer which clearly informs the customer of his right to a hearing on the issue of default before any repossession." Wis. Adm. Code, Vol. 1, BKG 80.68. The defendant concedes that it did not give the plaintiff notice of his right to a hearing on the issue of default.

and give me a day to clean it out?" If this was all that transpired prior to the repossession, a finding of a "voluntary surrender" of the station wagon by the plaintiff would have been supported by the evidence.

The plaintiff, however, testified that Mr. Ketterhagen met him in the parking lot after work on December 11th, asked him if he had some money to pay on the station wagon and warned him, ". . . if I . . . couldn't get a payment to him, he would have to take the car." The plaintiff also testified that he told Mr. Ketterhagen that he would get paid the next day and would try to make a payment out of that check. According to the plaintiff, Mr. Ketterhagen then asked him where he lived and where he kept the station wagon and told him that he would come back again the next day for the payment. The plaintiff testified that the next day Mr. Ketterhagen met him again in the parking lot but, because his wage check had been garnisheed, he told Mr. Ketterhagen that he could not make a payment on the station wagon. Plaintiff further testified that Mr. Ketterhagen then told him, "Well, he said he had no alternative. He would have to come and get the car." Plaintiff testified that he told Ketterhagen, ". . . if he had to come and get it that I would have to have time to get it cleaned out to get my personal things out and stuff like that."

In its memorandum opinion the trial court placed heavy stress on the circumstances surrounding the actual taking of the station wagon by the defendant's officer on December 13, 1974. On that date, while the plaintiff was at work, the officer went to the plaintiff's residence where he knew the car was parked and took with him a duplicate set of keys. The wife of the plaintiff refused the officer's request that she turn over the keys to the car. While there is no evidence that the plaintiff directed his wife to refuse to surrender the keys, it was conceded by the defendant at trial and the trial court so found that

the defendant's officer used a duplicate set of keys to drive the station wagon away and that the personal effects of the plaintiff were not removed from the car. The trial court concluded that "the surrender of the vehicle was not 'voluntary' on the part of the plaintiff. [The car] was, I believe 'snatched' in the very manner condemned by the drafters of the comparatively new Consumer Code." That is strong language. But it is clear that the circumstances surrounding the actual taking strongly support the trial court's holding that the taking here was not a "voluntary surrender" as it is defined by the Act. On these facts and this record the judgment in favor of the plaintiff is affirmed.

*By the Court.*—Judgment affirmed.